IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ronald D. Leonard, | : |
| | : Case No. 2:24-cv-03932 |
| Plaintiff, | : |
| v. | : Judge Graham |
| | : |
| Hocking Metropolitan Housing Authority, *et al.*, | : Magistrate Judge Vascura |
| | : |
| Defendant(s). | : |

## OPINION & ORDER

This matter is before the Court upon Plaintiff Ronald D. Leonard's ("Leonard") objections to the Report and Recommendation ("R&R") recommending dismissal of his Complaint. Am. Obj., doc. 5; R.&R., doc. 3. Leonard brings this action against the Defendants—the Hocking Metropolitan Housing Authority ("HMHA") and several of its employees—for failure to accommodate his disability and interference with his rights under the Fair Housing Amendments Act, 42 U.S.C. § 3601, *et seq.* ("FHAA"), for disability discrimination under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and for negligent training and supervision. For the reasons that follow, Leonard's objections are **OVERRULED** and the Court **ADOPTS** the recommendation that his Complaint be **DISMISSED** without prejudice.

### STANDARD OF REVIEW

Pursuant to the Federal Magistrate Judges Act this matter was referred to a magistrate judge for an initial screening to determine if the complaint or any portion thereof must be dismissed. 28 U.S.C. § 636. A complaint filed in forma pauperis "shall" be dismissed if it "is frivolous or malicious[,] fails to state a claim on which relief can be granted[, or] seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Either party may file

[1]

objections within fourteen days of the issuance of the report and recommendation of the magistrate judge. 28 U.S.C. § 636. The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* The Court shall adopt any recommendations to which the parties do not object except "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Thus, "a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds pro se complaints "to less stringent standards than formal pleadings drafted by lawyers."

[2]

*Garrett v. Belmont Cty. Sheriff's Dep't*, 374 F. App'x 612, (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). However, courts are not required "to guess at the nature of the claim asserted." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## BACKGROUND

As alleged in his Complaint, at all relevant times, Leonard was a disabled individual residing in a rental dwelling managed by Defendant HMHA and its employees, Defendant Thomas N. Blatchley ("Thomas"), Defendant Kristen Blatchley ("Kristen"), and Defendant Amy Montgomery ("Montgomery") (collectively, "Defendants"). Doc. 2, ¶¶ 8-9; ¶ 12. In August 2020, Leonard submitted documentation from a physician, Dr. Anurag Gupta, which stated that Leonard "requires the presence of an emotional support dog at all times and all accommodations should be made to allow this." Doc. 2-1. Leonard claims that this documentation was "accept[ed] and fil[ed]" by the Defendants when first presented on August 28, 2020, and that he resided in the dwelling with his emotional support animal ("ESA") for over three years without incident. Doc. 2, ¶ 14.

In a letter to Leonard dated March 26, 2024 ("March letter"), HMHA wrote,

> Upon doing a review of the files, I have found that we are missing some information on your dog. We are missing 2024 tags and current rabies vaccinations. I also notice that your assistance animal agreement is not signed. Please come to the office to sign.
>
> Please have this information turned into the office no later than April 5, 2024.
>
> Thank you
>
> Management

Doc. 2-1, # 39. In the document before the Court, attached to Leonard's Complaint, the words "assistance animal agreement is" appear to have been crossed out by hand, though it is unclear

[3]

who applied the pen mark, or why. In any event, there is no indication in the materials before the Court that Leonard responded to or otherwise acted upon the March letter.

In a second letter to Leonard, dated April 8, 2024 ("April letter") (i.e., after the April 5 due date stated in the March letter), HMHA wrote,

> It has been brought to management's attention that you still have not submitted proper documentation on the need for your dog. We are still missing the 2024 rabies vaccination and the 2024 dog tags. These needs turned into the office no later than, April 18, 2024. If you have not gotten the shots done yet, you will need to at least prove that you have an appointment scheduled by the 18th...
>
> This is your first warning for this violation. Please take the necessary steps to address this issue. Failure to provide this information could result in loss of your pet or housing. If you have questions, please call the office...
>
> Thank you
> Management

*Id.* at # 46. The April letter also cited the lease agreement between the parties, which provides that a resident will "not be permitted to have a pet unless the HMHA PET AGREEMENT is signed and all requirements of the agreement and the HMHA PET POLICY are being followed." *Id.*

Leonard alleges that, by sending the March and April letters, the Defendants "unlawfully discriminatorily coerced, intimidated and harassed Leonard with the threat of losing his ESA and his dwelling... thereby mentally forcing Leonard... to move out of his unit which constitutes a constructive eviction." Doc. 2, ¶ 15. The Complaint does not describe any further communications between Leonard and the Defendants following the April letter. Nevertheless, Leonard contends that Defendants' "extreme and outrageous" conduct caused him to move out on May 5, 2024.

[4]

**DISCUSSION**

The Court reaches the same conclusion as the Magistrate Judge—that Leonard has failed to state colorable federal claims and that supplemental jurisdiction over his state law claims is unwarranted. To state a claim for failure-to-accommodate under the FHAA, Leonard must show:

> (1) [he] suffers from a disability within the meaning of [FHAA]; (2) the defendant knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation.

*Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011). To state a claim for interference under the FHAA, or a claim of disability discrimination under the Rehabilitation Act, Leonard must establish that the Defendants acted with "discriminatory animus." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012); *see also Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 841 (6th Cir. 1996) (holding that Rehabilitation Act claim requires claimant to show "that he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his or her handicap").

**No Failure to Accommodate**

Leonard has failed to state a claim for failure-to-accommodate under the FHAA. At the pleading stage, the Court can reasonably infer—primarily from the physician letters Leonard has submitted—the first four (4) elements of a failure-to-accommodate claim: (1) Leonard suffers from a disability within the meaning of the FHAA; (2) the Defendants knew or reasonably should have known of the disability; (3) Leonard's ESA "may be necessary" for his use and enjoyment of the dwelling; and (4) the accommodation is reasonable.

As to the last element, the Magistrate Judge determined that Leonard failed to allege that the Defendants "refused to allow [him] to live at the housing complex with his ESA," and thus he could not sustain a failure-to-accommodate claim under the FHAA. Doc. 3, # 51 (citing *Overlook Mut. Homes, Inc.*, 415 F. App'x at 621). In reaching this conclusion, the Magistrate Judge noted, *inter alia*, that "there is no indication that the Defendants were questioning the legitimacy of [Leonard's] need for an ESA, that the pet agreement would have deprived [Leonard] of the ability to live at the housing complex with his ESA, or that Defendants otherwise violated [Leonard's] rights under the FHAA." *Id.*

Leonard's objections to the R&R take particular issue with the references to the "pet agreement" and, more generally, with references to his ESA as a "pet." Doc. 5.[1] Notably, Leonard cites a guidance from the U.S. Department of Housing and Urban Development ("HUD Guidance"), published January 2020, which states that service animals "are not pets" and thus are not subject to the pet policies of a housing provider, such as those cited by HMHA in the April letter. U.S. Dep't of Housing and Urb. Dev., FHEO-2020-01, 1, Assessing a Person's Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act (2020); *see also* April letter, doc. 2-1, # 46 (referring to the "HMHA PET AGREEMENT" and "HMHA PET POLICY").

But the HUD Guidance does not conflict with the Magistrate Judge's conclusion that Leonard has failed to plead sufficient facts to plausibly support that his requested accommodation was refused by HMHA. Leonard's filings do not evince any response on his part to the March and April letters. On the contrary, it appears that he disregarded the March letter, prompting the April letter, which stated: "This is your first warning for this violation. Please take the necessary steps

---

[1] Leonard later submitted "amended objections" with additional documentation which he claims was inadvertently omitted from his original complaint, such as the lease agreement.

to address this issue. Failure to provide this information could result in loss of your pet or housing." Doc. 2-1, # 46. The fact that Leonard claims to have lived in the dwelling with his ESA for nearly four (4) years does not change the calculus. Even accepting Leonard's assertion that his initial physician's note was "accepted and filed" by HMHA in 2020, the Court struggles to see how the relatively benign inquiries from the housing provider, without more, could amount to a refusal of his accommodation.

### No Discriminatory Animus

Leonard has failed plead sufficient factual matter to support a reasonable inference that the Defendants acted with discriminatory animus, and thus he has failed to state a claim for interference under the FHAA or discrimination under the Rehabilitation Act. The Magistrate Judge concluded that Leonard had failed to show discriminatory animus, noting "all residents with pets, regardless of disability, were required to sign a pet agreement." Doc. 3, # 52. Again, Leonard's objections focus on the alleged mislabeling of his ESA as a "pet" in light of the HUD Guidance. But even accepting Leonard's proposition—that his animal was an ESA and thus *not* subject to a "pet" agreement—he still has not alleged facts from which the Court could infer a discriminatory animus. There is no evidence that the Defendants harbored discriminatory sentiment toward persons with disabilities or that the HMHA letters were sent to Leonard because of his status as a disabled individual. Therefore, dismissal is warranted for Leonard's claims for interference under the FHAA and for discrimination under the Rehabilitation Act.

### CONCLUSION

Leonard has failed to state a claim for which relief could be granted. As set forth above, his claims sounding in federal law are deficiently pleaded and warrant dismissal. Furthermore, Leonard did not raise any objections to the portion of the R&R which recommended that the Court

[7]

decline to exercise supplemental jurisdiction over his state law claims. The Court therefore **ADOPTS** the recommendations of the Magistrate Judge and **ORDERS** that the claims under the FHAA and Rehabilitation Act be **DISMISSED**. The Court further **ORDERS** that the state law claims be **DISMISSED** without prejudice.

    **IT IS SO ORDERED**.

                                                    s/ James L. Graham  
                                                    JAMES L. GRAHAM  
                                                    United States District Judge

DATE: February 27, 2025.